UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,               Case No. 24-cr-20026

    v.                       Hon. David M. Lawson

WILLIE B. HOPKINS,

        Defendant.

_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO
PRECLUDE OTHER ACTS EVIDENCE
[ECF No. 64]**

In support of its response to defendant Hopkins' motion to preclude other acts evidence, ECF No. 64, the United States incorporates by reference the facts and argument set forth in the Government's Notice of Intent to Admit Other Acts Evidence Under FRE 404(b), ECF No. 54, PageID.379-410 **(Exhibit 1)**. For the reasons stated therein, and in this response and brief, the Court should deny Defendant Hopkins' motion to preclude other acts evidence.

## Admissibility under FRE 404(b)

The analysis of admissibility under Federal Rule of Evidence 404(b) consists of three parts: first, the trial court must make a preliminary determination as to whether sufficient evidence exists that the prior act occurred; second, the court must make a determination as to whether the "other act" is admissible for a proper purpose under Rule 404(b); and third, the district court must determine whether the "other acts" evidence is more prejudicial than probative under Rule 403. *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001).

### a. Hopkins concedes the robberies are sufficiently similar, which satisfies the standard for admission

Hopkins does not argue that the Government seeks to admit evidence of the uncharged robberies for an improper purpose and tacitly acknowledges that proving Hopkins' identity as the robbery suspect is an appropriate use of other-acts evidence at trial. *See* Def. Motion, ECF No. 64, PageID.452. Hopkins simply claims that there is insufficient evidence to believe that *he* is the one that committed the uncharged robberies to justify admitting the evidence of those other crimes. *Id.* at PageID.453. But Hopkins concedes that the charged acts and uncharged acts are "so

similar ... it would be impossible for a jury not to find Hopkins guilty[.]" *Id*. at PageID.454. This concession is damning since the test for admissibility of other acts evidence to establish identity examines whether the charged and uncharged acts are "sufficiently similar." *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001). Because Rule 404(b) evidence is admissible if a jury can reasonably conclude that the act occurred and that the defendant was the actor, the similarity Hopkins complains of in his prejudice argument actually weighs conclusively in favor of admission. *See United States v. Hopper*, 436 F. App'x 414, 421 (6th Cir. 2011).

### b. Hopkins argues that the probative value of the proffered other-acts evidence is outweighed by the danger of unfair prejudice since the charged and uncharged crimes are too similar

Hopkins complains that admitting his uncharged robberies creates unfair prejudice. He believes that the jury will naturally infer, based on the similarity of the charged and uncharged conduct, that if he committed the uncharged conduct then he must have been the one to commit the charged robberies. Def. Motion, ECF No. 64, PageID.454. Ignoring the fact that admission of other-acts identity evidence is specifically designed

3

to create this exact inference, Hopkins contradicts himself by arguing the evidence tying him to the uncharged robberies is "minimally circumstantial" *Id.* at PageID.453. Hopkins' arguments regarding the lack of eyewitness identification and the ambiguity of cellular location evidence placing his phone merely "in the area" of the robberies only further highlight the probative value of each piece of evidence to show his distinct patterns and similarities throughout each of the charged and uncharged crimes.

      **c. Hopkins argues the inferences supporting his identity are weak, but then argues that the Government does not need to admit the other-acts evidence because the proof of Hopkins' identity is strong**

Hopkins final attempt to preclude the Government's proffered other-acts evidence is to suggest that it doesn't really need it since the evidence against Hopkins is so strong. *Id.* at PageID.455. The flaw in Hopkins' argument is clear when the facts he relies on to suggest the Government's case is so strong are laid out:

Hopkins points out that his cellphone data places him at the time and places of the robberies. *Id.* But that cellular mapping compares Hopkins' phone location to each charged and uncharged robbery to show

that his proximity to so many of the robberies could not be mere coincidence. Or to put it another way, the more robberies that his phone appears near, the more likely he was involved in the robberies. And in turn, reducing the number of other robberies presented to the jury would reduce the probative value of showing the locations where Hopkins phone was on particular dates and times.

Hopkins also points to his vehicle being depicted on surveillance video at several of the robberies, but he fails to acknowledge that that surveillance includes uncharged robberies. Similarly, Hopkins points to the Maverick brand cigarettes found in his car, but he also fails to acknowledge that those cigarettes tie him to charged and uncharged robberies less than an hour apart—where he was depicted without a mask at the earlier uncharged robbery. That same uncharged robbery is where Hopkins was depicted wearing the clothes that were later recovered from his home. *See* Def. Motion, ECF No. 64, PageID.455.

By picking through these pieces of evidence to argue how strong the Government's case is, Hopkins lays out perfectly why this other-acts evidence is so probative and why it should be admitted.

## **Conclusion**

The Court should deny Hopkins' motion to preclude other acts evidence.

Respectfully submitted,

JEROME F. GORGON, JR.
United States Attorney

/s/ Michael Taylor
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3211
(313) 226-9516
michael.taylor3@usdoj.gov

Dated: May 8, 2025

# Exhibit 1

**Government's Notice of Intent to Admit
Other Acts Evidence Under FRE 404(b)
[ECF No. 54]**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,               Case No. 24-cr-20026

       v.                       Hon. Sean F. Cox

WILLIE B. HOPKINS,

       Defendant.

_____/

**GOVERNMENT'S NOTICE OF INTENT TO ADMIT OTHER ACTS EVIDENCE UNDER FRE 404(b)**

The United States submits the following in support of its combined notice of intent to admit 404(b) evidence.

**Factual Background – Charged Acts**

**Counts 1 & 2: Kroger in Ypsilanti on July 19, 2023**

On July 19, 2023, at approximately 6:17 a.m., at a Kroger grocery store located at 1771 E. Michigan Ave. Ypsilanti, MI 48198, Willie Hopkins approached the cashier in the self-checkout area of the store and handed over a couple of bottle-return slips. Hopkins then produced a black Glock handgun, pointed it at the cashier, and demanded money.

1

The cashier opened the register, took out $350.00 dollars, and gave it to Hopkins, who then walked out of the store.



*Defendant Hopkins inside Kroger on July 19, 2023.*

Kroger surveillance footage depicted the robber, consistent with Hopkins, as a black, male, wearing a black knit hat, surgical mask, black Adidas hoodie with white lines on the sleeves, black pants, and black shoes. It also showed him brandishing a black Glock handgun at the cashier. Hopkins can be seen holding the pistol in his right hand while using his left-hand index finger to point and direct the victim.

### **Counts 3 & 4: BP Gas Station in Ann Arbor on July 29, 2023**

On July 29, 2023, at approximately 1:00 a.m., a cashier working at BP Gas Station, located at 3031 Washtenaw Avenue, Ann Arbor, MI 48104, heard the supermarket doorbell ring and saw Willie Hopkins walking into the store. Again, surveillance showed physical

characteristics matching Hopkins: an older black male wearing a black hat, black sweatshirt, and black sweatpants. After a verbal exchange, Hopkins pulled a Glock pistol out of his waistband and pointed it at the cashier.



*Defendant Hopkins inside BP on July 29, 2023.*

The cashier opened the register and grabbed some bills. He then closed the register and put those bills on the table. Hopkins then grabbed all the cash and stuffed it inside his pocket. While stuffing the bills, Hopkins dropped one the gloves that he had been holding on the floor of the store. He then left.

Law enforcement obtained DNA results from the dropped glove in the B.P. Gas station robbery showing that it was a match to Hopkins. The results revealed that it was approximately 2.4 quadrillion times more likely that the glove contained Hopkins' DNA than that of unrelated, unknown contributors.

### Counts 5 & 6: Mobil Gas Station in Pittsfield on Aug. 8, 2023

On August 8, 2023, at approximately 12:30 a.m., Hopkins robbed a Mobil Gas Station located at 4005 Washtenaw Avenue, Pittsfield Township, MI 48108. As with prior robberies, Hopkins wore a surgical face mask, black t-shirt, and black knit hat, and a beaded metallic chain necklace. Hopkins threatened the gas-station clerk at gun point with the Glock pistol. According to the clerk and surveillance video, Hopkins produced a trash bag and ordered the clerk to put the money inside it. After that, Hopkins ordered the clerk to go to the back of the store and lie down, facing away from the door for at least five minutes before calling 911.

External cameras from the gas station showed at around 12:30 a.m., a black Chrysler 300 sedan with tinted windows and sports rims entered a nearby parking lot, circled around to the west, and then parked

on the northside of the lot. The video also showed that at approximately 12:33 a.m., Hopkins entered the Mobil parking lot on foot and then went into the convenience store. The video further showed that at approximately 12:35 a.m., Hopkins exited the convenience store, walked back to the Chrysler 300, and quickly drove away.

Additional surveillance footage captured Hopkins enter another gas station during the day hours prior, appearing to wear the same black Air Jordan shoes as he wore during the August 8, 2023, robbery. That footage also captured Hopkins' stance, black t-shirt, and chain necklace matching the robbery.

### **Hopkins' Arrest and Additional Identification Evidence**

On August 8, 2023, Pittsfield Police Department (PTPD) officers located and arrested Willie Hopkins. The PTPD officers immediately noted that Hopkins matched the physical description of the armed robber of the Mobil Gas Station. Specifically, they noted that his age, height, face, hair, weight, and arm tattoos matched photos of the robber that had been circulating. Hopkins' booking photos—including a comparison of the arm tattoos—are shown below.



*Comparison images of Hopkins during August 8 robbery and booking*

After Hopkins' arrest, law enforcement obtained cell site data (Time Difference of Arrival (TDOA) data and Google satellite location data), which showed Hopkins' cell phone communicating with the towers closest to the Mobil Gas Station and the Kroger at the times when those places were robbed. Hopkins' cell phone was also pinging with towers in the

6

exact direction that the robber departed in each of those instances. While Hopkins cellular phone location was not identified at the July 29 BP robbery, his DNA was matched to the glove he dropped during that robbery.

## **Uncharged Acts**

In addition to the three robberies charged in the Indictment, evidence connects Hopkins to eight other robberies for a total of 11 armed robberies in the span of approximately four weeks from July 11, 2023, through August 8, 2023.

### **July 11, 2023 – Mobil Gas – Ypsilanti, MI**

At approximately 10:05 p.m., on July 11, 2023, Hopkins, wearing a blue jumpsuit, black knit cap, plastic gloves, and a surgical-style mask, entered the Mobile Gas station on 1645 Washtenaw Ave., Ypsilanti, MI. Hopkins was armed with a black semi-automatic pistol and robbed the clerk of that gas station at gunpoint. After taking approximately $1,000 - $2,000 in cash and the clerk's cellular phone, Hopkins made the clerk lay on the floor before fleeing the location on foot.

**July 12, 2023 – Speedway Gas – Ypsilanti, MI**

At approximately 3:28 a.m., on July 12, 2023, Hopkins wearing a camouflage-pattern hooded winter coat and surgical mask, entered the Speedway Gas station on 1395 E. Michigan Ave., Ypsilanti, MI. Hopkins produced a black Glock semi-automatic pistol and demanded money from the cash register. Hopkins held the pistol in his right hand and used his left-hand index finger to point and direct the clerk to hand over the money. Hopkins took approximately $1,100 from the clerk and fled the scene.



*Hopkins pointing to direct the robbery victim on July 12, 2023*

**July 19, 2023 – Speedway Gas – Ypsilanti, MI**

At approximately 4:30 a.m., Hopkins wearing a black knit cap, black sweatshirt with 3 stripes on the sleeves, and surgical mask, entered

8

the Speedway Gas station on 2190 W. Michigan Ave., Ypsilanti Twp., MI. The clerk had fallen asleep behind the counter and Hopkins woke the clerk at gunpoint demanding money from the register. The clerk handed over approximately $320, and Hopkins fled the scene. Hopkins can be seen holding the black Glock pistol, which the clerk also described as a Glock, in his right hand while he used his left-hand index finger to point and direct the clerk to give him the money.



*Hopkins pointing to clerk during July 19, 2023, robbery*

### July 26, 2023 – Dollar General – Pittsfield Twp., MI

At approximately 7:30 p.m., on July 26, 2023, Hopkins wearing a blue knit hat, surgical mask, and black jacket with 3 stripes down the

9

sleeves, entered the Dollar General store on 4719 Washtenaw Ave., Ann Arbor, MI. Hopkins produced a black pistol and attempted to rob the cashier. However, the cashier grabbed a hammer, which was store merchandise, and tried to fight off Hopkins. Hopkins disarmed the cashier and took the hammer— fleeing the scene without obtaining any cash.

### July 28, 2023 – Gallup One Stop Citgo Gas – Ann Arbor, MI

On July 28, 2023, at approximately 11:58 p.m., Hopkins entered the Citgo Gas station on 2955 Packard, Ann Arbor, MI. The clerk reported that Hopkins wore a blue hat, medical mask, grey hooded sweatshirt, and dark sweatpants. Hopkins pointed a grey/black pistol at the clerk and demanded all the money out of the register. Because the power was out, the clerk indicated that he could not open the register, so Hopkins demanded five $20 lottery tickets and the clerk's cellular phone.

### August 1, 2023 – Shell Gas – Ann Arbor, MI

At approximately 10:48 p.m., on August 1, 2023, Hopkins wearing a white hooded sweatshirt and sweatpants, with a baseball cap, and surgical mask, entered the Shell Gas station on 3240 Washtenaw Ave., Ann Arbor, MI. Hopkins approached the clerk and asked for several

10

lottery tickets, when the clerk began to retrieve the tickets, Hopkins produced a black pistol and pointed it at the clerk. Hopkins then demanded the lottery tickets and all of the money in the cash register. The clerk complied and bagged up the money and the tickets, which Hopkins took before fleeing the scene. Hopkins can be seen holding the black Glock pistol in his right hand while using his left-hand index finger to point and direct the clerk during the robbery.



*Hopkins pointing with his left hand during the August 1 Shell robbery.*

### August 2, 2023 – Speedway Gas – Sylvania, OH

At approximately 11:34 p.m., on August 2, 2023, Hopkins wearing a beanie hat, black zip hooded sweatshirt with white strings, black pants, and a surgical mask entered the Speedway Gas station on 6601 Monroe St. in Sylvania, OH. Hopkins produced a black pistol and pointed it at

the clerk demanding money from the register. Hopkins can be seen holding the black pistol in his right hand and using his left-hand index finger to point and direct the clerk during the robbery. After the robbery, Hopkins ordered the clerk to sit in a cubby under the register and face away from the counter with her head down. Hopkins drove a black Chrysler 300 vehicle, parked nearby, and walked to the gas station on foot prior to the robbery and returned after.



*Hopkins pointing during robbery and Chrysler 300 used to travel to and from Sylvania robbery.*

Surveillance video showed Hopkins entered the gas station approximately 20 minutes prior to the robbery. In the earlier footage, Hopkins can be seen without his jacket, wearing a dark-colored shirt with

the word "Denver" on top and a thin metal chain necklace with a heavy object or charm hanging from it. The footage also showed Hopkins to be in his 40-50s with extensive tattoos on his arms. During this earlier entry, Hopkins purchased a pack of Maverick brand cigarettes. When Hopkins was arrested on August 8, 2023, packs of Maverick brand cigarettes were located inside the black Chrysler 300 vehicle he was driving.



*Comparison images of Sylvania suspect and Hopkins after arrest.*

Surveillance footage also captured the black Chrysler 300 at the earlier transaction where Hopkins bought gas and Maverick cigarettes.



*Comparison between Sylvania suspect and Chrysler 300 driven by Hopkins during his arrest.*

### August 3, 2023 – BP Gas – Dundee, MI

Approximately an hour after the robbery at the Speedway in Sylvania, OH, and about 20 miles north along US-23, Hopkins wearing a dark knit cap, black zip hooded sweatshirt with white strings, and a surgical mask, entered the BP Gas station on 602 Tecumseh St., Dundee, MI. Hopkins looked around the store, purchased a light blue can of Red Bull energy drink, and then left. At approximately 12:24 a.m., Hopkins returned to the gas station and approached the clerk, requesting a pack of Maverick brand cigarettes. When the clerk reached for the cigarettes, Hopkins produced a black Glock pistol and ordered one person to lay on the ground while he demanded the clerk give him the money from the register. When the clerk handed over the money, he ordered her to lay on

14

the ground as well while he fled the scene. Surveillance footage shows Hopkins holding the pistol in his right hand while using his left-hand index finger to point and direct the clerk during the robbery. The thin beaded metallic necklace is also depicted.



*Hopkins pointing during Dundee robbery.*

### **Cellular location evidence ties Hopkins to the robberies**

Hopkins' cellular phone was connected to cellular towers in proximity to the Kroger at 1771 E Michigan Avenue, Ypsilanti on July 19, 2023, between 04:44 a.m. and 06:19 a.m. The robbery at that location occurred at approximately 6:17 a.m.

Hopkins' cellular phone was connected to cellular towers in proximity to the Mobil Gas Station at 4005 Washtenaw Avenue, Pittsfield Township on August 8, 2023, at 12:30 a.m. The robbery at that location occurred at approximately 12:30 a.m.

In addition to the three charged robberies, Hopkins' cell phone location data and Google records also show that his cell phone was located in the area of the following armed robberies, around the times that the incidents occurred:

- 7/11/2023 at 22:05 – Mobil Gas, 1645 Washtenaw Ave, Ypsilanti

- 7/12/2023 at 03:28 – Speedway Gas, 1395 Washtenaw Avenue, Ypsilanti

- 7/19/2023 at 04:27 – Speedway Gas, 2190 W Michigan Ave, Ypsilanti

- 7/26/2023 at 19:30 – Dollar General, 4719 Washtenaw Ave, Pittsfield Township

- 8/1/2023 at 22:48 – Shell Gas, 3240 Washtenaw Ave, Ann Arbor

- 8/2/2023 at 23:30 – Speedway Gas, 6601 Monroe St, Sylvania, OH

- 8/3/2023 at 00:24 – BP Gas, 602 Tecumseh St, Dundee, MI

16

Hopkins cellular phone location data also shows that Hopkins' phone was located near the Speedway Gas Station on 3000 Carpenter Rd. Ypsilanti, MI on August 7, 2023 where he was depicted on surveillance cameras without a mask shortly before his last robbery.

## Analysis of Hopkins' cell phone ties Hopkins to the robberies

Hopkins' cellular phone was seized and analyzed by law enforcement after his arrest. Investigators located Google web searches in Hopkins phone pertaining to bank robberies on July 28, 2023. Also on that date, Hopkins' phone shows he searched "what gas station is on Packard Road are closed Lulu loss of power." The Citgo Gas station on 2955 Packard, Ann Arbor, MI was robbed at 11:58 p.m. that day.

On July 12, 2023, at 4:13 a.m., Hopkins sent a text message containing a video of two bundles of cash to a contact named "Ebony." Within six hours prior to that text message, Hopkins had robbed two gas stations. At approximately 10:05 p.m., on July 11, 2023, the Mobile Gas station on 1645 Washtenaw Ave., Ypsilanti, MI was robbed, and at approximately 3:28 a.m., on July 12, 2023, the Speedway Gas station on 1395 E. Michigan Ave., Ypsilanti, MI was robbed.

17

Files located in Hopkins cellular phone showed that he used Google maps to navigate to the location of the robbery in Sylvania, OH. Analysis revealed a cached image contained on Hopkins' phone on August 2, 2023, at 11:23 p.m. depicting the Google Street View image of the Speedway Gas station on 6601 Monroe St. in Sylvania, OH. That gas station was robbed at approximately 11:34 p.m. that same day. Hopkins' phone also contained sound files from Google turn-by-turn navigation showing that he was driving around Sylvania, OH. The sound files create a route ending at the Speedway Gas station on Monroe St.

### Search of Hopkins' vehicle and residence ties Hopkins to the robberies

When Hopkins was arrested on August 8, 2023, he was driving a black Chrysler 300 with sport rims as depicted at several of the above-described robberies. When law enforcement searched Hopkins' vehicle, they located an empty pack of Maverick brand cigarettes in the driver's side door and a partly full pack of Maverick brand cigarettes near the gear shifter— the same brand as Hopkins purchased before the Sylvania, OH robbery on August 2, 2023, and the same brand requested before the Dundee, MI robbery on the morning of August 3, 2023.

18





*Maverick cigarettes in Hopkins vehicle and the same brand requested during the August 3, 2023, Dundee, MI robbery.*

Also located in Hopkins' vehicle were several scratch-off lottery tickets, similar to what was taken during the July 28th and August 1st robberies described above. In the trunk of Hopkins vehicle were light-blue, Red Bull energy drink cans, which matched the drink Hopkins bought prior to the August 3, 2023, Dundee, MI robbery.

 

*[Left: Hopkins prior to August 3ʳᵈ Dundee robbery and right: cans located in his vehicle after arrest.]*

When law enforcement searched Hopkins' residence, they recovered a black Denver shirt as depicted in the surveillance footage prior to the August 2, 2023, robbery in Sylvania, OH. During Hopkins' post-arrest interview, he denied ever travelling to Sylvania, OH. Law enforcement also located an extra-large black t-shirt consistent with what Hopkins wore during the August 8, 2023 robbery.



*Comparison shirt from Hopkins' residence with Sylvania, OH robbery.*

## <u>Law and Argument</u>

### I.   Evidence pertaining to the uncharged robberies is admissible

The Court should admit evidence of the armed robberies committed by Willie Hopkins as outlined above. This evidence is relevant and admissible under Rule 404(b) to prove identity, motive, common scheme, plan, and modus operandi. Fed.R.Evid. 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such "evidence may be admissible for another purpose," however, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Fed.R.Evid. 404(b)(2)*. The list of legitimate

21

purposes is not exhaustive, and "[o]ne allowable purpose which traditionally has been stated as an exception to the 'other crimes' rule, but which was not included in the Rule 404(b) list of examples, is to show the existence of 'a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other.' " *United States v. Burkley*, 591 F.2d 903, 920 (D.C.Cir.1978) (citation omitted); *see also United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir.1985). Rule 404(b) "is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified." *Blankenship*, at 739.

Trial courts employ a three-part test to determine the admissibility of 404(b) evidence. *United States v. Mack*, 729 F.3d 594, 601 (6th Cir. 2013). First, a court determines whether there is sufficient evidence that the crime, wrong, or other act took place. *See id*. Second, it decides whether evidence of that conduct is offered for a proper purpose, i.e., "whether the evidence is probative of a material issue other than character." *Id*. Third, the court considers whether any risk of unfair prejudice substantially outweighs the evidence's probative value. This

framework "is not implicated when evidence of prior acts is 'part of a continuing pattern of illegal activity' or is 'inextricably intertwined' with the indicted crime." *United States v. McGee*, 510 F. App'x 377, 381 (6th Cir. 2013).

Fed. R. Evid. 401(a) provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 402 provides in essence that relevant evidence is admissible except as otherwise provided. Fed. R. Evid. 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence."

### 1. There is sufficient evidence that each listed armed robbery took place from July to August 2023.

The first step of the Rule 404(b) inquiry is to decide if there is "sufficient evidence" that the prior act "actually occurred." *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012). This sufficiency hurdle is cleared so long as "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States*, 485

U.S. 681, 689 (1988). For each of the above robberies, witness descriptions, surveillance footage, cellular mapping, forensic cellphone analysis, and items consistent between the robberies and those found in Hopkins Chrysler 300 (which also matches the vehicle he drove on surveillance during some of the robberies) or his home, demonstrate that a jury could reasonable conclude that the robberies occurred and that Hopkins was the actor that carried out those robberies.

On such a record, there can be no doubt that the Government has met its obligation under *Huddleston* to provide sufficient evidence from which a jury could conclude that Hopkins committed the above-described robberies.

### 2. The armed robberies are being offered for the proper purpose to prove identity, modus operandi, motive, and common scheme or plan.

Once a criminal defendant enters a plea of not guilty, the Fifth and Sixth Amendments to the Constitution entitle that defendant to at least two trial-related rights. First, the simple plea of not guilty puts the prosecution to its proof as to all elements of the crime charged. Second, the Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is

24

charged. *United States v. Ayoub*, 498 F.3d. 532, 544–45 (6th Cir. 2007) (internal quotations and citations omitted).

In this case, one of the key elements is the identity of the defendant as the offender. The issue at trial will be who was the person who robbed these gas stations and a grocery store in July and August of 2023. Again, the Sixth Circuit has stated that Rule 404(b) "is actually a rule of inclusion rather than exclusion, …" *Blankenship*, 775 F.2d at 739. The government is seeking to use the uncharged robberies for the purposes argued herein, which are not forbidden.

Where the identity of the perpetrator of the charged crime is disputed, the Sixth Circuit "has overwhelmingly approved the admission of 'other acts' evidence." *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006). The question of admissibility becomes whether the acts are "sufficiently similar" to the charged offense so as to be probative of identity. *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001).

For a prior bad act to be probative of identity, "it is not necessary that the crimes be identical in every detail." *Perry*, 438 F.3d at 648 (*quoting United States v. Hamilton*, 684 F.2d 380, 385 (6th Cir. 1982)) Courts consider whether the similarities between the incidents constitute

25

a "signature," giving rise to the inference that they were committed by the same person. *Mack*, 258 F.3d at 553-54. But that signature need not be "unique." *United States v. Washam*, 468 F. App'x 568, 572 (6th Cir. 2012). Rather, sufficient similarity can be demonstrated by combining ordinary, non-distinctive features of the acts. *See United States v. Woods*, 613 F.2d 629, 635 (6th Cir. 1980) (finding, in bank robbery cases, use of ski masks, goggles, jumpsuits, and stolen getaway cars sufficiently similar).

Here, the consistency between surgical masks, clothing, description, method of operation, similar weapon, and timing of these robberies provides more than enough similarity so as to be probative of identity. However, the overlap of these similarities is buttressed by DNA and cellular location evidence confirming Hopkins' identity and placing him at each of those robberies. The overall similarities in the method and target locations tends to prove that they were committed by the same perpetrator. *Woods*, 613 F.2d at 635.

The interconnected facts shared between the robberies, the number of robberies within a relatively limited geographical area over a short period of time, the timing of the robberies occurring overnight when

Hopkins admitted he would leave his home, the common vehicle, and Hopkins' statement regarding donating plasma, all tend to prove that Hopkins needed money in the summer of 2023, and he engaged in a pattern of robberies using a common scheme and plan to carry them out. Evidence from each of the robberies helps to prove aspects of other robberies and synergistically illustrates Hopkins' actions from July through August 2023 for the jury.

### 3. The probative value of the uncharged robberies is not substantially outweighed by any unfair prejudice.

Because surveillance video clearly depicts the perpetrator forcing business employees to give him money at gunpoint, proof of the identity of the masked perpetrator will be decisive in this trial. The relevancy bar is low, demanding only that the evidence "logically advances a material aspect of the proposing party's case." *United States v. LaVictor*, 848 F.3d. 428 (6th Cir. 2017) (citation omitted). Here, the proffered evidence is relevant because it has the tendency to advance a material aspect of the case and make the following more probable than it would be without the evidence: defendant's modus operandi and identity as the armed assailant during multiple Hobbs Act robberies. Fed. R. Evid. 401(a).

After determining the purpose for which the Rule 404(b) evidence is being offered and determining that the identified purpose is at issue in the case, the court must apply Rule 403 and weigh the probative value of the evidence against the danger of unfair prejudice. *United States v. Abboud*, 438 F.3d 554, 581 (6th Cir. 2006). Generally speaking, all evidence is prejudicial because it prejudices the party against whom it is admitted. For evidence to be excluded under Rule 402, "the effect . . . must not simply be prejudicial, but it must be *unfairly* prejudicial." *United States v. Ray*, 549 F. App'x 428, 433 (6th Cir. 2013) (emphasis added) (internal quotation marks omitted). Meaning, the evidence "must do more than paint the defendant in a bad light"; it must instead be "so unrelated to the charged offense that it creates too much of a risk that the jury will generalize from prior examples of bad character" and be "lure[d]" into convicting based on its belief that the defendant is "a bad person." *Clay*, 667 F.3d at 697 (brackets and citation omitted); *see also United States v. Mandoka,* 869 F.3d 448 (6th Cir. 2017) (considering whether evidence "inflamed the jurors' passions and motivated them to convict on an improper basis").

The uncharged robbery evidence is not substantially outweighed by

the risk of unfair prejudice. Evidence regarding the uncharged robberies overlaps in many respects to the charged offenses and occurred during the same period of time. The proofs offered as to the uncharged robberies will not invite the jury to generalize the character of Hopkins as a bad person. Instead, they collectively establish that, because of the pattern and similarity of the offered evidence, Hopkins was the one that committed the charged crimes.

Again, Hopkins is denying his guilt, so his identity as the perpetrator in the robberies will be the material issue in the case against him. "In such a case, when the issue is one related solely to identity, this Court has overwhelmingly approved of the admission of 'other acts' evidence." *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006).

As a safeguard, this Court can give a limiting instruction to the jury to consider the other acts evidence only for the proper purposes for which it is offered. This will reduce the risk of any unfair prejudice to the defendant. *See Ray*, 549 F. App'x at 434 (giving Rule 404(b) limiting instruction to "mitigate[d] any possible unfair prejudice to the defendant"). The propriety and effect of this instruction has been affirmed by this Court on repeated occasions. *See, e.g., United States v.*

29

*Ramer*, 883 F.3d 659, 671 (6th Cir. 2018); *United States v. Barnes*, 822 F.3d 914, 924 (6th Cir. 2016); *United States v. Abboud*, 438 F.3d 554, 583 (6th Cir. 2006); *United States v. Myers*, 102 F.3d 227, 233-34 (6th Cir. 1996). Though unfair prejudice is not at play here, a limiting instruction can effectively mitigate any conceivable risk. *See, e.g., United States v. Potter*, 927 F.3d 446, 452 (6th Cir.) ("The district court's limiting instruction about the narrow uses for this evidence also diminished any unfair prejudice by reducing the risk that the jury would put the evidence to an improper purpose.") (emphasis omitted), cert. denied, 140 S. Ct. 436 (2019); *United States v. LaVictor*, 848 F.3d 428, 448 (6th Cir. 2017) (similar).

This 404(b) evidence is being admitted for the proper purposes stated herein, and the probative value of this evidence balances in favor of its admission.

## __Conclusion__

The Court should admit the Government's proffered evidence pertaining to the uncharged robberies and attendant circumstances as described above.

Respectfully submitted,

JULIE A. BECK
Acting United States Attorney

/s/ *Michael Taylor*
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9516
Email: Michael.Taylor3@usdoj.gov

Dated: February 21, 2025

**Certificate of Service**

I hereby certify that on May 8, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants of record.

s/Michael Taylor
Michael Taylor
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3211
(313) 226-9516
michael.taylor3@usdoj.gov