UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                         Case No. 24-cr-20026

v.                                  Hon. David M. Lawson

WILLIE B. HOPKINS,

        Defendant.

_____/

## Evidentiary Brief in Support of Factual Basis for Plea to Count 12

Willie B. Hopkins robbed nine gas stations, a dollar store, and a grocery store at gunpoint in July and August of 2023. The robberies occurred over several weeks, primarily targeting the Ann Arbor and Ypsilanti area. Hopkins was eventually charged in the first superseding indictment with six counts of robbery, in violation of 18 U.S.C. § 1951(a), and six counts of using and carrying a firearm during and in relation to those robberies, in violation of 18 U.S.C. § 924(c)(1)(A). (Indictment: ECF No. 16, PageID.43).

On October 23, 2025, Hopkins pleaded guilty pursuant to a Rule 11 plea agreement to all six robberies (Counts 1, 3, 5, 7, 9, and 11) as well as the firearm charge related to the August 8, 2023, robbery (Count 12). (Plea Agreement: ECF No. 85, PageID.591). During the plea hearing and in the factual basis of the plea

agreement, Hopkins readily admitted that he used, carried, brandished, and pointed a handgun at the cashiers and demanded the cash in the registers during the six charged robberies. (*Id.* at PageID.594–597; 10/23/25 Plea Hr'g Tr.: ECF No. 87 at PageID.632–635). But during the plea hearing, when the Court asked Hopkins what type of gun Hopkins used during the robbery charged in Count 11, he claimed he used a "pellet" gun. (*Id.* at PageID.636).

Following the defendant's allocution, the government proffered additional facts for the court to consider before deciding whether there is a sufficient factual basis for the guilty plea. *See* Fed. R. Crim. P. 11(b)(3). The government summarized the anticipated testimony of victims from several of the robberies and how they believed the gun Hopkins used was real based on their personal experiences with firearms. (10/23/25 Plea Hr'g Tr.: ECF No. 87 at PageID.640–41). The government described that two of the witnesses would testify that they believed the gun was a Glock. (*Id.* at PageID.641). The government also summarized the report prepared by ATF Special Agent Mark Davis, who would have testified as an expert witness. (*Id.*). Based on Agent Davis's experience as an interstate nexus expert which requires him to examine firearms regularly and identify their features, the government indicated he would testify that based on his review of surveillance videos from the robberies, Hopkins appeared to use the same firearm in each of the charged robberies and that the firearm was a Glock.

2

(*Id.* at PageID.641–42). The government also summarized Agent Davis's anticipated testimony regarding the specific features of the firearm Hopkins used that led Agent Davis to the conclusion that it was a Glock. (*Id.* at PageID.642–43).

Following the hearing, the Court ordered the government to "file an evidentiary brief summarizing the facts that would be presented at trial to establish guilt beyond a reasonable doubt that the firearm allegedly brandished as charged in Count 12 of the first superseding indictment fit the definition of a firearm as mentioned in 18 U.S.C. § 924(c)(1)(A) and as defined by 18 U.S.C. § 921(a)(3)." (Order: ECF No. 86 at PageID.613).

The evidence that the government would present at trial is summarized below. In addition, the government also summarizes the various sources from the entire record that the Court could consider in determining whether there is a sufficient factual basis for the defendant's guilty plea. *See United States v. Pitts*, 997 F.3d 688, 697–98 (6th Cir. 2021) (noting that a sufficient factual basis for a plea can come from the entire record including the factual basis in the plea agreement, the complaint affidavit, the indictment, and the PSR); *United States v. Tunning*, 69 F.3d 107, 114 (6th Cir. 1995) (finding that a sufficient factual basis can come from a variety of sources including a statement from the government).

**Summary of Trial Evidence Regarding Count 12**

*July 12, 2023: Speedway Gas, Ypsilanti, MI (Counts 1 & 2)*

On July 12, 2023, at approximately 3:28 a.m., Hopkins robbed the Speedway Gas station located at 1395 E. Michigan Ave., Ypsilanti, MI. The clerk, M.F., would testify that the robber pointed a black gun at him and demanded money from the cash register. M.F. would further testify that he used to play with Airsoft guns and observed that the semi-automatic handgun used during the robbery did not have an orange tip or a plastic seam in the middle which is typical of plastic Airsoft guns. M.F. also would testify that the robber's gun looked heavier than an Airsoft gun based on how the robber handle it. *See* Gov. Ex. A: ATF Report of Interview No. 12.

In addition to M.F.'s testimony, the government would seek to admit a clip of the surveillance footage from Speedway that shows the features of the gun Hopkins used. *See* Ex. B: Clip from 7/12/23 Speedway surveillance video. As detailed below, ATF Special Agent Davis would testify as an expert witness regarding his findings and conclusions based on his review of the surveillance video.

***July 19, 2023: Speedway Gas, Ypsilanti, MI (other acts evidence)***

On July 19, 2023, at approximately 4:30 a.m., Hopkins robbed the Speedway Gas station located at 2190 W. Michigan Ave., Ypsilanti Twp., MI. The clerk, D.H., would testify that the robber pointed a black gun at her and demanded money from the register. D.H. would testify that she has seen real guns in her life, knows what real guns look like, and the firearm that the robber pointed at her did not look fake. *See* Gov. Ex. A: ATF Report of Interview No. 12. D.H. would further testify that the robber's gun looked like a type of handgun she had seen before based on the slide's square shape, black color, and barrel. *Id.* D.H. also could tell the gun had a metal slide, that the barrel was not fully solid inside, and it was hollow. *Id.* Based on her observations and prior experience with guns, she would testify that the robber's firearm looked like a Glock-manufactured pistol. *Id.*

In addition to D.H.'s testimony, the government would seek to admit a clip of the surveillance footage from Speedway that shows the features of the gun Hopkins used. *See* Gov. Ex. C: Clip from 7/19/23 Speedway surveillance video. As detailed below, ATF Special Agent Davis would testify as an expert witness regarding his findings and conclusions based on his review of the surveillance video.

*July 19, 2023: Kroger, Ypsilanti, MI (Counts 3 & 4)*

On July 19, 2023, at approximately 6:17 a.m., Hopkins robbed the Kroger grocery store located at 1771 E. Michigan Ave. Ypsilanti, MI. The cashier, J.V., would testify that the robber pointed a black gun at him and demanded money. J.V. would further testify that the robber's firearm looked like the service weapons that the responding officers carried. *See* Gov. Ex. D: Excerpt from Washtenaw County Sherrif's Office Case Report, pp. 1, 5–6). One of the responding officers would testify that deputies from the Washtenaw County Sheriff's Office are issued Glock-manufactured weapons. *Id.*

In addition to J.V.'s testimony, the government would seek to admit a clip of the surveillance footage from Kroger that shows the features of the gun Hopkins used. *See* Gov. Ex. E: Clip from 7/19/23 Kroger surveillance video. As detailed below, ATF Special Agent Davis would testify as an expert witness regarding his findings and conclusions based on his review of the surveillance video.

*July 29, 2023: BP Gas Station, Ann Arbor, MI (Counts 5 & 6)*

On July 29, 2023, at approximately 1:00 a.m., Hopkins robbed the BP Gas Station located at 3031 Washtenaw Avenue, Ann Arbor, MI. The clerk, O.F., would testify that the robber pointed a gun at him and demanded the cash in the register. O.F. would further testify that the robber said that he didn't want to hurt O.F. and then pulled out a gun. *See* Gov. Ex. F: Transcript Excerpts from O.F.

Interview at 1. O.F. would describe the robber's gun as a black pistol that was rectangular in shape and made of metal. *Id.* at 3–4. O.F. also would testify that he had no doubt it was a real gun and believed it was a pistol—not a revolver. *Id.* at 2, 4. O.F. would state that he definitely did not think it was a toy or made of plastic. *Id.* at 3–4. O.F. would describe that while working at the gas station, a lot of police officers come in and O.F. would talk to them about their guns and how much they weigh. *Id.* at 4. During these many interactions, O.F. has seen the types of guns officers wear in their belt and the robber's gun looked the same. *Id.* One of the responding officers would testify that the Ann Arbor Police Department issues its officers Glock-manufactured service weapons. O.F. also would testify that the robber's gun looked like the Agent Davis's gun, which Agent Davis would testify is a Glock. *Id.*

In addition to O.F.'s testimony, the government would seek to admit clips of the surveillance footage from BP Gas that shows the features of the gun Hopkins used. *See* Gov. Ex. G: Clip from 7/29/23 BP Gas surveillance video Camera 6; Gov. Ex. H: Clip from 7/29/23 BP Gas surveillance video Camera 7. As detailed below, ATF Special Agent Davis would testify as an expert witness regarding his findings and conclusions based on his review of the surveillance videos.

*August 1, 2023: Shell Gas, Ann Arbor, MI (Counts 7 & 8)*

On August 1, 2023, at approximately 10:48 p.m., Hopkins robbed the Shell Gas station located at 3240 Washtenaw Ave., Ann Arbor, MI. The clerk, A.M., would testify that the robber pointed a black pistol at A.M. and demanded lottery tickets and all the money in the cash register.

In addition to A.M.'s testimony, the government also would seek to admit a clip of the surveillance footage from Shell that shows the features of the gun that Hopkins used. *See* Gov. Ex. I: Clip from 8/1/23 Shell surveillance video. As detailed below, ATF Special Agent Davis would testify as an expert witness regarding his findings and conclusions based on his review of the surveillance video.

*August 2, 2023: Speedway Gas, Sylvania, OH (other acts evidence)*

On August 2, 2023, at approximately 11:34 p.m., Hopkins robbed the Speedway Gas station located at 6601 Monroe St. in Sylvania, OH. The clerk, M.H., would testify that the robber pointed a small black pistol at her and demanded money from the register. *See* Gov. Ex. J: Sylvania Police Department report.

In addition to M.H.'s testimony, the government also would seek to admit a clip of the surveillance footage from Shell that shows the features of the gun that Hopkins used. *See* Gov. Ex. K: Clip from 8/2/23 Speedway surveillance video. As

detailed below, ATF Special Agent Davis would testify as an expert witness regarding his findings and conclusions based on his review of the surveillance video.

***August 3, 2023: BP Gas, Dundee, MI (Counts 9 & 10)***

Approximately 50 minutes after the robbery at the Speedway in Sylvania, OH, and about 20 miles north along US-23, Hopkins robbed the BP Gas station located at 602 Tecumseh St., Dundee, MI. The clerk, E.H., would testify that Hopkins pointed a black handgun at her and demanded the money from the register. *See* Gov. Ex. L: Dundee Police Department report. E.H. would further testify that he thought the robber's firearm was real because she had seen a lot of toy guns before, and this one did not look like a toy gun. *See* Gov. Ex. A: ATF Report of Interview No. 12.

In addition to E.H.'s testimony, the government would seek to admit a clip of the surveillance footage from BP Gas that shows the features of the gun Hopkins used. *See* Ex. M: Clip from 8/3/23 BP Gas surveillance video. As detailed below, ATF Special Agent Davis would testify as an expert witness regarding his findings and conclusions based on his review of the surveillance video.

9

*August 8, 2023: Mobil Gas, Pittsfield Twp., MI (Counts 11 & 12)*

On August 8, 2023, at approximately 12:30 a.m., Hopkins robbed the Mobil Gas Station located at 4005 Washtenaw Avenue, Pittsfield Township, MI. The clerk, L.M., would testify that the robber approached him with a black pistol and said, "I don't want to kill you. I just want the money." *See* Gov. Ex. N: Transcript of L.M. interview at 1. L.M also would testify that he came from Yemen and saw a lot of guns there so knows guns. *Id.* at 3–4. L.M. would further testify that he thought the robber's gun was a Glock due to the same rectangular shape of the barrel which was pointed directly at him from about 3 feet away. *Id.* at 4, 6.

In addition to L.M.'s testimony, the government would seek to admit a clip of the surveillance footage from Mobil that shows the features of the gun that Hopkins used. *See* Gov. Ex. O: Clip from 8/8/23 Combined Mobil surveillance video. The government would also seek to admit a clip of the surveillance footage from Mobil during which Hopkins tells L.M., "Put it in here. I didn't come in to hurt you. Just the money. I'm already wanted for murder and I'm on the run, so I don't wanna kill nobody again but I'm on the run. Come on!" *See* Gov. Ex. P: Clip from 8/8/23 Mobil surveillance video. As detailed below, ATF Special Agent Davis would testify as an expert witness regarding his findings and conclusions based on his review of the surveillance videos.

10

***Expert Opinion—ATF Special Agent Mark Davis***

The government would have called ATF Special Agent Mark Davis as an expert witness to testify regarding his knowledge, skill, experience, training, and education regarding firearms, including his examination and identification of firearms.[1] *See* Gov. Ex. Q: Declaration of Agent Mark Davis with Attachment 1. Agent Davis would testify that he examined surveillance footage from ten of the eleven robberies committed by Hopkins in July and August 2023.[2] He also prepared a report summarizing his findings and conclusions related to the firearm used in those robberies. *Id.* At trial, Agent Davis would testify consistent with the report he prepared, which is attached to his Declaration as Attachment 1. Specifically, Agent Davis would testify that he identified seven unique characteristics of the firearm Hopkins used in the August 8, 2023 robbery as being consistent with a Glock-manufactured firearm. *Id.* at Att. 1. Those characteristics include: the black and rectangular shape of the upper part of the firearm, the iron sights, the ejection port, a trigger guard, an ergonomic indentation, a protruding barrel, and a silver serial number plate (or strike plate). *Id.* The government would also seek to introduce a summary chart demonstrating Agent Davis's findings as to

---

[1] On February 20, 2025, the government provided notice of its intent to call Special Agent Mark Davis at trial to provide expert/opinion testimony in firearms identification.

[2] Due to a power outage, there was no surveillance footage for July 28, 2023, robbery of Citgo gas station in Ann Arbor.

the features of the firearm used in each robbery that are consistent with the firearm being a Glock. *See* Gov. Ex. R: Summary Chart of Agent Davis's findings.

Agent Davis would further testify that it appears that the same semi-automatic pistol was used during the robberies based on the features of the firearm that are visible in the surveillance footage. *See* Gov. Ex. Q at Att. 1. Given Agent Davis's expert opinion that the same firearm was used in all of the robberies discussed in his report, the testimony of the victim witnesses of the other robberies is relevant to establish the nature of the firearm used in Count 12.

### Summary of Evidence in the Record Regarding Count 12

In addition to the summary of evidence that the government would introduce at trial and the supporting exhibits described above, there are other sources contained in the entire record that the Court could consider in determining that there is a sufficient factual basis for the defendant's guilty plea.

*Criminal Complaint Affidavit*

The criminal complaint affidavit includes the clerk's description that during the robbery, Hopkins stated, "I will not shoot you, I just want the money" before putting a firearm against the clerk's back. (Criminal Complaint: ECF No. 1 at PageID.4). It also includes a summary of what the surveillance video depicts related to the firearm—that it was a "black Glock-style handgun"—which is consistent with Agent Davis's expert opinion as well as the description of the

12

firearm by the victim witnesses of four of the robberies, including the one on August 8, 2023 (Count 12). (*Id.*).

***Plea Agreement and Plea Hearing Colloquy***

Prior to the October 23, 2025, plea hearing, Hopkins signed a written plea agreement and affirmed that "[b]y signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation." (Plea Agreement: ECF No. 85, at PageID.611). The plea agreement sets forth the elements of Count 12, which requires proof that "[t]he defendant knowingly used or carried a firearm." (*Id.* at PageID.594). During the plea hearing, the defendant once again affirmed that he understood the elements of Count 12. (10/23/25 Plea Hr'g Tr.: ECF No. 87 at PageID.631–32). Hopkins also again confirmed that his counsel explained to him what the elements of the crimes to which is pleading guilty are and the evidence that would prove those elements. (*Id.* at PageID.621). Based on Hopkins's repeated affirmations that he understood the elements of 18 U.S.C. § 924(c)—the statutory definition of which does not include a pellet gun—the record supports that the firearm involved in Count 12 was a real firearm.

13

Moreover, in the "Factual Basis" section of the plea agreement, as to Counts 11 and 12, Hopkins agreed that he "brandished and pointed a handgun at the cashier." (ECF No. 85 at PageID.597). He also agreed that the facts set forth on pages 4 through 7 are "true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea. (*Id.*at PageID.594). Hopkins therefore agreed that the "handgun" referred to in the factual basis for Count 12 constitutes a sufficient basis for his guilty plea to that count.

### *Presentence Investigation Report*

The Court can also consider the forthcoming Presentence Investigation Report in determining whether a sufficient factual basis exists for the defendant's guilty plea to Count 12.

### <u>Conclusion</u>

The evidence that would have been presented at trial would have been sufficient to secure convictions on the charged § 924 (c) counts. *See United States v. Sherer,* 770 F.3d 407, 412 (6th Cir. 2014) (surveillance footage and two eyewitnesses who testified that gun looked and felt like genuine gun were sufficient evidence that gun was real); *United States v. Conner*, 306 F. App'x 978, 981–82 (6th Cir. 2009) (government not required to produce an expert witness to testify that gun was real, eyewitness testimony of two individuals that defendant

14

was holding a black gun, as well as video surveillance and photographs, and testimony of co-defendant was sufficient circumstantial evidence to sustain a § 924(c) conviction).

The standard before the Court is not proof beyond a reasonable doubt. Rather, prior to entering judgment, the Court must find a sufficient factual basis for Hopkins's guilty plea. This is not a high standard to meet. *See United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (holding that finding a sufficient factual basis does not require "strong evidence of actual guilt," but rather enough evidence to "satisfy it[self] that there is a factual basis. . . .") (internal citations omitted). The entire record before the Court as described above provides more than a sufficient factual basis for Hopkins's guilty plea on Count 12. Should the Court disagree, the government is prepared to proceed to trial on all counts.

*(signatures on the following page)*

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

*s/Sarah Alsaden*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Email: Sarah.Alsaden@usdoj.gov

*s/ Frances Lee Carlson*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Email: Frances.Carlson@usdoj.gov

2

## **Certificate of Service**

I certify that on November 19, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants of record.

/s/ *Sarah Alsaden*
Assistant United States Attorney

3